UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAMES HERRON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CAUSE NO. 3:15CV498-PPS |
| | ) |
| SUPERINTENDENT, | ) |
| | ) |
| Respondent. | ) |

**OPINION AND ORDER**

James Herron, a pro se prisoner, filed a habeas corpus petition challenging the prison disciplinary hearing in which a Disciplinary Hearing Officer found him guilty of conspiring to traffic contraband in violation of Indiana Department of Correction policies. [ECF 1 at 1.] As a result, Herron was sanctioned with the loss of 100 days earned credit time and was demoted from Credit Class 1 to Credit Class 2. [*Id.*] Herron's petition identifies three grounds for relief.

In Ground One, Herron argues that the hearing officer had insufficient evidence on which to find him guilty. [ECF 1 at 2.] In the disciplinary context, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985). "In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's

1

decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (quotation marks omitted). In short, the standard for sufficiency of the evidence in the context of prison disciplinary matters is an exceedingly modest one. *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (quotation marks, citations, parenthesis, and ellipsis omitted). In fact, a Conduct Report alone can be sufficient evidence to support a finding of guilt. *McPherson*, 188 F.3d at 786.

Herron was charged with violations of IDOC A-111 and A-113. [ECF 6-1 at 1.] IDOC A-111 penalizes "[a]ttempting or aiding and abetting with another to commit any Class A offense." Indiana Department of Correction, Adult Disciplinary Process: Appendix I.

http://www.in.gov/idoc/files/02-04-101_APPENDIX_I-OFFENSES_6-1-2015(1).pdf.

IDOC A-113 prohibits inmates from "[e]ngaging in trafficking (as defined in IC 35-44.1-3-5) with anyone who is not an offender residing in the same facility." *Id.* Indiana Code 35-44.1-3-5 gives this definition of trafficking:

> (b) A person who, without the prior authorization of the person in charge of a penal facility or juvenile facility, knowingly or intentionally:
>
> > (1) delivers, or carries into the penal facility or juvenile facility with intent to deliver, an article to an inmate or child of the facility;
> >
> > (2) carries, or receives with intent to carry out of the penal facility or juvenile facility, an article from an inmate or child of the facility; or
> >
> > (3) delivers, or carries to a worksite with the intent to deliver,
> alcoholic beverages to an inmate or child of a jail work crew or
> community work crew…

IC § 35-44.1-3-5 (West).

> The Conduct Report charged Herron as follows:
>
> On 6/3/15 I began investigating the above offender for possible Trafficking. Information was gathered from phone calls between the Herron (sic) and his girlfriend Alicia Stout, indicating she was making contraband drops for Herron at Minimum Housing.
>
> On 5/22/15 Herron received conduct after be (sic) found in possession of tobacco. Information from phone calls prior to this incident, indicated Alicia was to get an item ready to bring when she came to visit.
>
> On 6/3/15 information was gathered from phone calls in which Herron asks Alicia to "make it smaller," "take them out of the thing to make it smaller" and that he wanted to "make sure she got out of here alright." Other language used during the calls supported the allegation that Alicia had dropped contraband off. Additional calls on 6/3/15 indicated that Alicia was on MCA grounds to make drop, but there were too many people around.
>
> Phone calls were continued to be monitored over the next several days. Information was gathered that Herron and Alicia were attempting a new way to get contraband into the facility. They discussed "mailing" the stuff, that it was a safer way, and others had done it before. Herron told Alicia to mark the box with "stars" and to wrap the items in a t-shirt. He also gave her a specific return address to put on the label.
>
> Postal deliveries were monitored for the next several days to attempt to intercept the box. In a later phone call, Alicia admitted she had not mailed the box and Herron indicated he was glad because "they been out there every day checking."
>
> See DII Case # 15-MCF-0077 for further. (CONFIDENTIAL).

[ECF 6-1 at 1.] The hearing officer considered staff reports, the Conduct Report, evidence from witnesses, and the evidence contained in the confidential investigation file. [ECF 6-3 at 1.] Based on this evidence, the hearing officer found Herron guilty. [*Id.*]

The hearing officer had sufficient evidence to find Herron guilty of conspiracy to traffic. Herron's communications with Stout can easily be understood as instructions to Stout for smuggling contraband into the prison. "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 457 (1985). While it is possible that the recorded conversations served a benign purpose, Herron has not set forth any such alternative explanation. There was plainly "some evidence" to support the finding of guilty.

Herron argues that he should not have been found guilty because he was not "convicted of any tobacco." [ECF 3 at 2.] This is true, but irrelevant. Herron was charged and found guilty of conspiracy and attempt, not possession. The fact that Herron was not in possession of the contraband does not implicate the sufficiency of the evidence used to find him guilty. Thus, Ground One does not identify a basis for habeas corpus relief.

In Ground Two, Herron argues that the hearing officer improperly prohibited him from presenting exculpatory evidence. But Herron had the opportunity to request physical evidence in his defense, and he declined to do so. [ECF 6-2 at 1.] The absence of such evidence at his hearing was not a denial of due process, but the result of his not having requested it. Therefore, Ground Two does not state a basis for relief.

In Ground Three, Herron argues that the Hearing officer improperly denied his requested witness. [ECF 1 at 2.] During his screening, Herron requested that Alicia

Stout serve as a witness on his behalf. Herron claims that Stout would say that she "do[es] not know what's happening." [ECF 6-2 at 1.] Respondent argues that Herron is procedurally defaulted on this claim because he failed to raise the issue during his administrative appeals. [ECF 6 at 10.] But 28 U.S.C. § 2254(b)(2) permits me to deny a petition for habeas corpus on the merits even if the petitioner failed to exhaust his State court remedies. That's what I will do here.

It was not a denial of due process for the hearing officer to have declined to call Stout as a witness. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). "The requirements of due process are considerably relaxed in the setting of prison discipline . . .." *Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002). Prison disciplinary hearing officers do not have the power to compel the action or attendance of persons outside of the prison. *See Aguilar v. Endicott*, 224 F. App'x 526, 528 (7th Cir. 2007).

In addition, Stout was not merely a witness for Herron - she was also suspected of criminal activity. *See* IC 35-44.1-3-5. It was not unreasonable for the hearing officer to decline to interview a witness whose Fifth Amendment rights would be implicated in the process because "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits." *Wolff*, 418 U.S. at 556. The onerous task of pursuing a witness outside of the prison, who may seek the assistance of outside counsel, amounts to the type of "crippling impediment" to efficient prison management that *Wolff*

5

explicitly sought to prevent. *Id.* Furthermore, there was nothing preventing Herron from asking for time to obtain a statement from Stout himself. Thus, Ground Three is not a basis for habeas corpus relief.

Herron raises one final issue in his traverse. According to Herron, he did not receive 24-hour's notice prior to his hearing. [ECF 8 at 6.] Herron did not raise this issue in his petition, or in his appeals, so the issue is waived. Furthermore, this claim has no merit. When Herron was provided with notice of the disciplinary charges, he had the opportunity to waive his 24-hour's notice of the hearing. [ECF 6-2 at 1.] He check-marked the box that indicated that he wished to waive this right. [*Id.*] In light of this waiver, Herron's due process right to notice was not violated when his hearing occurred the following day.

If Herron wants to appeal this order, he does not need a certificate of appealability because he is challenging a prison disciplinary proceeding. *See Evans v. Circuit Court*, 569 F.3d 665, 666 (7th Cir. 2009). However, he may not proceed in forma pauperis on appeal because pursuant to 28 U.S.C. § 1915(a)(3) an appeal in this case could not be taken in good faith.

ACCORDINGLY:

For the reasons set forth above, James Herron's petition for writ of habeas corpus [ECF 1] is **DENIED**.

The court **DENIES** petitioner leave to appeal in forma pauperis pursuant to 28 U.S.C. § 1915(a)(3).

The clerk is **DIRECTED** to close this case.

**SO ORDERED**.

ENTERED: June 8, 2017.        /s/ Philip P. Simon
                              Judge Philip P. Simon
                              United States District Court